IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | | |
|---|---|---|
| TERRY KEITH WENDT, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | Civil No. 07-06116-CV-SJ-NKL-P |
| v. | ) | Crim. No. 05-6035-01-CR-SJ-NKL |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**ORDER**

Pending before the Court is Terry Keith Wendt's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 [Doc. # 3]. For the reasons set forth below, the Court denies Wendt's motion.

**I.    Factual Background**

The facts of Wendt's stop and the search of his residence have already been stated by this Court. *See United States v. Wendt*, No. 05-6035, 2006 WL 1476946, at *1-*3 (W.D. Mo. May 23, 2006) (suppression hearing order). Wendt cites no evidence in the record for his statement of facts, so the Court will not consider his conclusory allegations to the extent they conflict with this Court's earlier findings. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.").

Wendt was convicted in 2000 for being a felon in possession of a firearm and he was on probation for that offense during the relevant time period. On August 30, 2005, Wendt's probation officer, Chris Buckman ("Buckman"), contacted Greg Coon ("Coon"), who is an officer with a joint

1

law enforcement effort known as the NITRO Task Force. Buckman advised Coon that he had received information from a confidential informant ("CI") that Wendt was living at 1005 Grant Street in Princeton, Missouri. The CI told Buckman that Wendt was driving a brown Ford Taurus with Iowa license plates and that Wendt did not have a valid driver's license. The CI also told Buckman that Wendt frequented a bar in Princeton called the Crossroads Bar and Grill and that Wendt frequently drank alcohol there. The CI stated that Wendt associated with a woman whose last name was McKnight. The CI told Buckman that Wendt had firearms at his residence and that the CI had observed the firearms within the previous thirty days. Buckman passed this information along to Coon.

On September 20, 2005, officers conducted surveillance of Wendt and observed him driving a brown Ford Taurus with Iowa license plates. Officers saw Wendt at the Crossroads Bar and Grill and he appeared to be drinking an alcoholic beverage. After leaving the bar, Wendt traveled to the home of Cynthia McKnight ("McKnight") in Princeton and he entered the home.

On September 22, 2005, officers conducted surveillance of Wendt at 1005 Grant Street in Princeton, Missouri. It appeared that Wendt lived there as he was working on a vehicle in front of the house. Wendt's brown Ford Taurus was parked at the home.

Via state records, officers independently verified that Wendt did not have a valid driver's license and that the brown Ford Taurus was registered to Wendt.

On October 12, 2005, Coon was contacted by the Mercer County Sheriff's Office ("Mercer County"). The same CI had contacted Mercer County and stated that Wendt had informed the CI that he had a .22 caliber rifle located in his bedroom in Princeton. Mercer County passed along this information to Coon.

2

On October 13, 2005, Coon contacted the CI directly and obtained similar information. The CI told Coon that Wendt had stated he had a .22 caliber rifle in his bedroom. According to the CI, the conversation occurred two weeks earlier. The CI had not actually seen the firearm for approximately two months.

On October 13, 2005, NITRO officers saw Wendt driving the Ford Taurus on Highway 65 in Grundy County, Missouri. The officers contacted the Missouri Highway Patrol ("MHP") and advised them that Wendt was operating a vehicle without a valid driver's license. The MHP stopped Wendt's vehicle.

Wendt had a passenger in the vehicle named Kendall Shriver ("Shriver"). Wendt immediately was placed under arrest for driving without a license. When officers asked if Wendt would consent to a search of his residence, he declined because what was in his room "would cost him a lot of years." It is unclear whether members of the MHP advised Wendt of his Miranda rights, but none of the NITRO officers did.

Shriver lived at the same residence as Wendt; he advised officers that he owned the home and that Wendt rented a room from him and they shared a common area. Shriver consented to a search of his portion of the home and the common area. Officers transported Shriver to the home in Princeton. Officers accompanied Shriver so they could secure the home while they obtained a search warrant for Wendt's bedroom.

One of the officers who accompanied Shriver was Casey Ballantyne ("Ballantyne"). Upon arriving at Shriver's home, Ballantyne testified that he performed a safety sweep of the residence to ensure no other people were there. Shriver told Ballantyne there were two bedrooms. The door to Wendt's bedroom was unlocked and the door to Shriver's bedroom was locked. Ballantyne opened

3

the door to Wendt's room and turned on the light wherein he observed a "long gun" leaning against the wall; he was not sure whether it was a BB gun or a firearm. After he determined that no one was in the bedroom, Ballantyne returned to the common area of the house with the other officers. Shriver's bedroom was locked and Ballantyne did not attempt to open that door.

While Ballantyne and the other officers accompanied Shriver to the residence, Coon and Billy Lee Wright ("Wright") accompanied Wendt to the Trenton city jail. They advised Wendt of his Miranda rights and asked him again if he would consent to a search of his bedroom. Wendt declined. Ballantyne called Wright and told him about what he observed in Wendt's bedroom, specifically the gun leaning against the wall. Hearing only Wright's end of the conversation, Wendt stated that he knew what a protective sweep was and that it would cost him thirty years. Wendt eventually invoked his right to counsel.

Coon and Wright then drafted an Affidavit to submit in support of an application for a search warrant. Coon served as the affiant and he outlined the information officers received from the CI about Wendt and his habits. He also outlined that the CI's information had been corroborated through independent surveillance and investigation. The Affidavit listed Wendt's previous convictions, including his 2000 conviction for being a felon in possession of a firearm. Coon also included the CI's information related specifically to the firearm. Ballantyne's report about a firearm leaning against the wall of Wendt's bedroom was also included in Coon's Affidavit. Coon obtained a search warrant and then executed the warrant on Wendt's bedroom. Officers recovered a .22 caliber rifle and .22 caliber ammunition from the bedroom.

On November 1, 2005, Wendt was charged in a one-count indictment with being a felon in possession of a firearm. Wendt subsequently filed a motion to suppress. The Court found, after a

4

de novo review of the record, that the search warrant was supported by probable cause, even without considering the portion of the Affidavit that related to Ballantyne's observation of the firearm in Wendt's bedroom.

## II.     Evidentiary Hearing

On a motion to vacate, a movant is entitled to an evidentiary hearing when the facts alleged, if true, would entitle him to relief. *See Payne v. United States*, 78 F.3d 343 (8th Cir. 1996). However, a claim may be dismissed without an evidentiary hearing if the claim is inadequate on its face. *Id.* Moreover, a district court need not hold an evidentiary hearing in a section 2255 case when the files and records conclusively show that the movant is not entitled to relief. *See Bradshaw v. United States*, 153 F.3d 704 (8th Cir. 1998). After reviewing the records and files, the Court concludes that all of Wendt's claims can be fully and fairly evaluated on the existing record and no evidentiary hearing is necessary.

Wendt's section 2255 motion is based on three theories: (1) the search was illegal; (2) 18 U.S.C. § 922(g)(1) is unconstitutional; and (3) his counsel was ineffective for failing to investigate the facts of this case or challenging constitutionality.

## III.    Discussion

### A.     Search Warrant

Wendt argues at length that there was no basis for the search warrant which resulted in officers recovering a firearm and ammunition from his bedroom. He asserts the initial stop was pretextual and unlawful, thus tainting the entire chain of events. The Court has already addressed the validity of the search, *see Wendt*, 2006 WL 1476946, and the Court's order denying suppression of the evidence was upheld on appeal. *See United States v. Wendt*, 219 Fed. App'x 598 (8th Cir.

5

2007) ("[W]e conclude that denying the motion to suppress was proper for the reasons stated in the district court's well-reasoned opinion and order."). Wendt may not relitigate in this section 2255 motion his unsuccessful challenge to the admissibility of the evidence found in his bedroom. *See Dall v. United States*, 957 F.2d 571, 572 (8th Cir. 1992). The issues raised by Wendt were addressed directly by the Court and affirmed by the Eighth Circuit. Therefore, the Court denies his challenge to either the search or the resulting evidence.

### B.     18 U.S.C. § 922(g)(1)

Wendt next challenges the constitutionality of section 922(g)(1), claiming that Congress is without power to abolish his Second Amendment right to bear arms. The constitutionality of section 922(g)(1) is not in doubt. *See United States v. Wilson*, 315 F.3d 972, 973 (8th Cir. 2003) (denying constitutional challenge to section 922(g)(1) based on Second Amendment); *see also United States v. Waller*, 218 F.3d 856, 857 (8th Cir. 2000) ("[I]t is now well-settled that Congress did not violate the Second Amendment in enacting [section 922(g)(1)]." (citing *Lewis v. United States*, 455 U.S. 55, 65-66 & n.8 (1980))).

Wendt maintains: "[S]ince the Federal Government's New Deal of 1933, the Federal Government and its judges have disregarded the injunctions and prohibitions of the Constitution and its Bill of Rights and the Supreme Court authorities which restrict and prohibits Government powers, and its actions against American Citizens; and the Government created its own power and laws which it uses against American Citizens today." Wendt's Reply at 8. Despite Wendt's citation to 19th Century caselaw, this Court is bound by Eighth Circuit and more recent Supreme Court precedent.

### C.     Ineffective Assistance

6

Finally, Wendt argues his counsel was ineffective because he did not investigate the facts into his "pretextual" stop and did not challenge the constitutionality of section 922(g)(1). To establish ineffective assistance of counsel, a movant must satisfy a two-part test. First, the movant must prove that his counsel's representation was deficient, and second, that the deficient performance prejudiced his case. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). A counsel's performance is deficient if he or she "failed to exercise the customary skills and diligence that a reasonably competent attorney would have exhibited under similar circumstances." *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996) (internal quotation omitted).

The prejudice component "focuses on the question [of] whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id.* Further, "[w]hen considering whether the defense suffered prejudice, [the] court must determine whether there is a reasonable probability (sufficient to undermine confidence in the outcome) that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Blankenship v. United States*, 159 F.3d 336, 338 (8th Cir. 1998) (internal quotation omitted). Counsel are presumed competent and the movant bears a heavy burden in overcoming this presumption; "conclusory allegations are insufficient to rebut this presumption of competency." *Carpenter v. United States*, 720 F.2d 546, 547-48 (8th Cir. 1983).

First, Wendt's allegations are conclusory and without citation to the record. *See Hollis v. United States*, 796 F.2d 1043, 1046 (8th Cir. 1986) ("Hollis' vague and conclusory allegations are not sufficient to state a ground for relief under 28 U.S.C. § 2255."). Second, Wendt cannot show

7

any prejudice. *See Strickland*, 466 U.S. at 694 (movant must demonstrate "that there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different"). The Eighth Circuit has already held that the search of Wendt's room was proper, and Wendt can point to nothing in the record that changes this analysis. Moreover, the constitutional challenges to section 922(g)(1) are frivolous and completely without merit; in fact, had Wendt's attorney made such an argument, that might have qualified as ineffective assistance. *See United States v. Collins*, __ F.3d __, 2007 WL 4355361, at *1 (7th Cir. 2007) (ordering show cause why attorney who argued Title 18 of the U.S. Code was unconstitutional should not be sanctioned and affirming judgment against client "without prejudice to the client's seeking post-conviction relief on the ground of ineffective assistance of counsel"). Wendt has not shown that, even had his attorney informed him of the caselaw he cites in his 2255 motion, there is a reasonable probability that the results of the proceeding would have been different. Thus, Wendt has not overcome the strong presumption of competency.

**IV.     Conclusion**

Accordingly, it is hereby

ORDERED that Wendt's Motion to Vacate, Set Aside, or Correct Sentence [Doc. # 3] under 28 U.S.C. § 2255 is DENIED.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: <u>January 28, 2008</u>
Jefferson City, Missouri